Case number 20-3969, Gregory Blank v. Nationwide Mutual Insurance Corporation et al. Arguments not to exceed 15 minutes per side. Ms. Probst, you may proceed for the appellant. Thank you. Good morning, Your Honor. Good morning, Tanya. Good morning. So today, Your Honor, we're here and I think there are just three issues that I want to address in this oral argument. With respect to the first assignment of error on Mr. Blank's interference claim, I believe the question to be addressed isn't a legal one, but a factual one. Specifically, not did Nationwide interfere, but how much did they interfere and did that interference lead to Mr. Blank's termination? Second, I want to address on the third assignment of error, not whether or not a qualified privilege exists, because I do believe it does. I think the issue is whether or not there was sufficient evidence of actual malice presented in the briefs to allow that claim to go to trial. And third, I think that with respect to the first and second assignments of error, the question becomes, was there sufficient evidence of a pretext established? So as we're here today, Your Honor, I don't think that these are legal questions so much as they are factual questions. Was there sufficient facts presented to the trial court to allow it to deny summary judgment? So with respect to the first assignment of error, the interference claim, with respect to the first question, how much did Nationwide interfere and did that interference lead to Mr. Blank's demotion and eventual termination? I believe the answer is that Nationwide did interfere substantially and that it did lead to Mr. Blank's demotion. Ms. Probst, if I could interrupt you. In reading your brief, the problem that I had was that while there was a conversation the same day as your client had taken FMLA leave, that seemed to me to be de minimis. You made a lot of other claims in your brief about other contacts between the employer and the employee, but they were either all before he took his leave or there's no record citation that you cited in your brief. So could you point us to what you think is the best evidence of something beyond a de minimis conversation after he went on leave? Yes, Your Honor. Sorry, I'm getting there. All right, so obviously you have the contact on April 9th, which you indicated, and you're looking for contact after that. The contact after that was his interaction with the Office of Ethics in April Compton, and in the record, that interaction... That's something that he initiated and they followed up. That's correct. He did initiate it because he was not allowed since he was on FMLA. I think the gist of this is that on April 9th when they demoted him and contacted him with respect to this demotion, he was not allowed because of his status on FMLA to participate in any meaningful investigation, and there was multiple emails. And so with respect to interfering while he's on leave, he has no ability to defend himself. He has no access to any information, and they give a 20-minute interview that doesn't allow him to access his emails, which would have required several days of analysis so that he could establish that this alleged email he sent to Ms. Glinsky was similar to 15 other emails he had sent, which is why he was forced to contact April Compton. Please, okay? Take a breath. I'm sorry. Okay. So you're not saying it was something that they did that constitutes the interference. Your claim is it's something they didn't do, which was to allow him to participate during the time he was on leave. Is that your claim? I think that, yes, in part it is because they didn't do it, so he was forced to contact April Compton, yes. So do you have any authority that says that FLMA interference can constitute not talking to somebody because they're prohibited by the statute from talking to somebody while they're on leave? No, of course not. What I'm saying is that that failure to do an investigation forced him to contact April Compton and use what was otherwise protected leave in an attempt to save his job. So does your argument really boil down to an argument that they couldn't continue with an investigation or he couldn't be dismissed while he was on FMLA leave? I think it does, actually. I think my argument is that in order for a proper investigation to occur, while Mr. Blank is on FMLA leave, it needs to be delayed until he returns so he can fully participate in his defense and that the investigation and demotion which occurred, which required him to do something after the fact with Ms. Compton at the Office of Ethics, was a violation of his interference. What I'm struggling with seems like a different claim than the claim you presented in your briefing. I'm not sure... We're having a little technical interference. I wonder if the clerk there has the IT people available. I don't think my iPad should be causing a problem, but I'm going to close it. Maybe that was an issue. So my question was whether the argument you're presenting now is different than the one you presented in your briefing. I don't think it's different. I think that it's just the result of the fact... You've asked me a direct question with respect to the documents and the information I provided in my brief, and I do believe that based on your question, it could be interpreted that way. Yes, I don't think it's different. Counselor, the record seems to indicate your client had been seeing a doctor or so prior to the controversy involving his employment, but he did not raise the disability issues with his employer until the difficulties arose regarding his employment. And I'm wondering what Mr. Blank did to demonstrate evidence indicating that his conditions, his medical or health impairment, constituted a disability that substantially limited a major life activity. In Mr. Blank's affidavit, he indicated that his disability, his fibromyalgia, which he was diagnosed with in February of 2017, limited his life activities specifically in his ability to properly, and I'm finding the actual words, sleep. I know it's one of them. Walking was difficult. Hold on. Is this the affidavit he submitted in support of his motion for summary judgment? It is. He indicated that the normal everyday functions that he could not perform were walking, breathing, sleeping, eating, or any form of aerobic exercise. Well, some of that information was not submitted by him preceding the filing of the motion for summary judgment. Is that right? In other words, as you know, you usually can't make very much headway by waiting until summary judgment and only then filing an affidavit to create a factual dispute. Isn't that a little bit of a problem with your case? I agree that his affidavit cannot create, in and of itself, a factual dispute. I disagree, though, that Mr. Blank wasn't available for a deposition and didn't sit for a deposition and wasn't answering all the questions. He did do all that. He requested all that information. Medical releases were signed, and it is not Mr. Blank's responsibility to ask himself questions in the deposition. My position is that in an adversarial proceeding like we have in this case, Mr. Blank makes a claim and he supplies the information via his medical records as required in response to interrogatories. The lack of proper questioning or—I'm not saying it was improper because Tanya did a good job, but what I'm saying is just because she didn't ask every question she could have and he couldn't have answered, I think her questions were limited to how it affected him in the workplace, not how it affected his life. And that isn't what disability determinations are about. It's not how does it affect you in the workplace. If you're a diabetic, it's not necessarily going to affect your work, but you're still disabled. So I think that the fact that he filed an affidavit with additional detail that was outside of the questions asked at the deposition isn't necessarily contradictory or a problem. I think it gives a full, clear picture as opposed to the limited questions that were asked of him, in addition to the medical records that he supplied. I would like to really quickly—not really, I have four minutes—but address the issues related to the defamation claims that Mr. Blank filed against Mr. Penwell and Ms. Glinsky. The court determined, since it's a place of employment, that they are entitled to a qualified privilege, and legally Mr. Blank does not dispute that. I think—I don't think, I know—what we dispute is that there was evidence sufficient to establish that there was actual malice with respect to Mr. Penwell and Ms. Glinsky. Specifically, there was evidence submitted to the court that Ms. Glinsky and Mr. Penwell had previously lied about Mr. Blank. And in doing that, specifically, Mr. Penwell himself sent three emails, all of which contained false information by his own admission. And that—in and of those three emails, there is no other reason that you would send blatantly false information, which he admitted it was false, to a supervisor regarding someone else unless you had some nefarious intent. The fact of the lie is sufficient to establish he knew it was false, he knew he was absent from work, he knew that nine months prior he'd got an email to complete this spreadsheet and to start working on this boat salvage project. He also knew that Mr. Blank had sent an email to his installer's staff about his medical condition and that—requesting that they only contact him via email. So his three emails, not even including the report of the fact that he said a racial slur, those three emails plus that, all of which were established to be false, is sufficient evidence that Mr. Penwell acted with actual malice in the actions he took toward Mr. Blank. Ms. Probst, I don't understand because, as I understand what happened here, the district court declined to consider these emails because the district court concluded that that was impermissibly expanding the scope of your defamation claim and you didn't amend the complaint. So what I understand you're saying is that isn't what you're doing, you're just trying to flesh out why you claim that these employees were lying in terms of the report they made. Am I right so far? Correct. So let's assume for a second that they said some other things in a subsequent email that are not part of your defamation claim that you contend are false. This really comes down to a he said, she said, does it not? The employees say that your client used certain language and he says he didn't, right? Correct. Now the company policy says that something like this has to be reported, assuming that it's true, correct? Correct. So why does the fact that your client says what they said about me is false and they say what they said is true, why is that evidence of actual malice? Because following that report, Nationwide themselves closed it as being unsubstantiated. Then following that closure... That's not a fair reflection of the record I would submit. They didn't say it was unsubstantiated, they said he had a good record, they thought he was remorseful of what he said, he promised he wouldn't do it again, so they closed the investigation. I can't find anything where they said that his version is correct and the employee's version is wrong, so where do I look for that? Seema Anand, in her deposition, said that the finding was unsubstantiated. Well, we'll look for it, so you say it's in the written report that the investigator made? Yes, and in Ms. Anand's deposition. Okay, alright, thank you, that helps. Okay, you're welcome. My particular point is, though, that the emails that followed to Ms. Anand are actual malice because they're on the record. Penwell says, yes, that's false, and there's information to establish that those emails are false, so there had to be, that's evidence of some nefarious, malicious intent with respect to Mr. Blank. We didn't get him the first time, so we're going to get him the second time. That's my point, that's my point, Your Honor. Alright, thank you, and we'll hear from Ms. Braun. Thank you. May it please the Court, Tanya Braun for Nationwide, Devin Penwell, and Laura Belinsky. I would submit that this is one of your classic disgruntled employee, let's throw absolutely everything against the wall and see if something sticks type of case. That tactic has been apparent from the very beginning when Appellant Blank threatened to, quote, take everybody apart as a result of his demotion, and followed it up by filing a nine count complaint against the company Penwell and Belinsky, two managers who had reported to him. At this point, only three of those original nine claims are before this court. I would like to take my time this morning to address some of the points raised by Appellant's counsel, and I will focus on any questions the court has. I think it's a back to basics approach here, though, that is most instructive, because that's what highlights the most obvious flaws in Blank's claims. I think we need to filter out the noise here that Blank has attempted to create and focus on what is actually determinative, and when we do that, it is clear that he cannot make out even a prima facie case, let alone carry his ultimate burden. On the record here, there's simply no evidence for a reasonable jury to conclude, or to, excuse me, to find in favor of Blank. Counsel, let me just, and I'm sure you were going to get there, but Ms. Probst just said that somewhere in the record, the company claims, I'm talking about the defamation claim now, the company claims or concluded that the allegations about whether or not Mr. Blank made this racially disparaging remark were unsubstantiated. In other words, not true. And she says that's the company's conclusion. Is that right? Can you shed any light on that? At no point in Appellant's briefing am I aware of pointing to the record, a record citation that would substantiate what Ms. Probst said this morning. In fact, to the contrary, the record is void of an ultimate conclusion as to what was said. The matter was simply closed and no formal discipline was issued, and that is not in dispute. And I think that's very important here, because with respect to Mr. Blank's defamation claim, it was pleaded and argued as defamation per quod. That means that he has to make out every element of his defamation claim. So while the focus with the question here is, was there a conclusion? And we would say there is no conclusion in the record and that Appellant's counsel did not point to one in any of the briefing submitted to this court. We would have to go beyond that. And look at what are the other elements of the claim. And Mr. Blank's burden there would be to show harm in relation to that statement. That is something he cannot do because it is undisputed that the original investigation closed without any adverse employment action as to him. And that his demotion was the result of his own actions, subsequent actions, and how he treated the two managers, Penwell and Galinsky, in the wake of them participating in the initial investigation. OK. So with respect, if I may, just turning to the issue raised about the disability discrimination claim and the affidavit that Mr. Blank submitted in response to the summary judgment motion. And the law is well established here that a motion for summary judgment cannot be defeated by an after the fact affidavit that contradicts deposition testimony. And on the record here, and we can look at page IVs 449 through 451 of Mr. Blank's deposition testimony. It is clear. Sorry, my video just went out. And they were not limited to his ability to work. He offered nothing. He asked for a clarification the first time he was asked. Very basically, is there something that your condition prevents you from doing? Is there anything you cannot do because of these issues? Rather than focus on something he could not do. Mr. Blank continuously spoke and testified to what he could do. He testified that he continued to work to the best of his ability. He continued to vacation. He drove 55 miles to work. He spoke about what he could not do and did not offer anything other than to say that his condition prevented him from not having a heart attack or a stroke. That is the most that he said in response to three open-ended questions, not limited to work, but asking broadly, is there something that your condition prevents you from doing? He offered nothing. Ms. Probst also said that the medical records were in evidence. And I guess we're supposed to conclude from that that the medical records corroborated that he was disabled, even if he wasn't totally forthcoming in response to your question. So what do you contend are shown by the medical records with respect to whether he's disabled? What I would contend with respect to the medical records is that it is Mr. Blank's burden to show that he is substantially limited in a major life activity in order to make out this very basic element of this prima facie case of disability discrimination. Whether he was questioned specifically about the medical records or not is apart from his burden. Following up on Judge McKee's question, what if the medical records showed that Mr. Blank is blind? And then at his deposition, he's asked, well, how does your blindness interfere with your life functions? And he says, well, I'm able to get around. I'm able to, you know, I use a cane. I use adaptive technology. I can do these various things. Would you still say, even though you had medical records that showed he was blind, that he wasn't inhibited in any major life function? I mean, is that the point you're trying to make? That no matter what the medical records say, you didn't need to read them as long as he cast his disability in a positive light in response to your questions? What I'm saying is that it's his burden to establish that he is substantially limited. In the complaint that he filed, he made no effort to identify any major life activity in which he was so substantially limited. The complaint was there.  And to speak directly to your point about the blindness, you know, the ADA has been amended and there are certain disabilities, right, where you don't have to go beyond a basic inquiry. Fibromyalgia is not one of them. So I would say to this court that it is a very different analysis and that he, to bear his burden, must point to evidence, evidence that is in the record to establish this. He was asked open-ended questions. That was one opportunity for him to show that there is some evidence in the record to again establish this very basic point. He failed in that respect and put in a contradictory declaration that the district court under abusive discretion standard was properly excluded. So the focus then, again, just goes back to his burden and an opposing summary judgment, right? If he wanted to point to medical records to try to create a fact issue on this very basic element, he could have. He should have. He didn't. And if I may make one final point on that, even in the contradictory affidavit that was properly excluded, I'd like to refocus the court on that testimony submitted via the affidavit. And that's at page ID 2435. There he said that because of my fibroalgia, I have difficulty. I have difficulty. That's the important point here. Sleeping, walking, eating, concentrating, et cetera. Even in the contradictory affidavit, he's saying that he only has difficulty. And mere difficulty under the law, under Ohio law, is not sufficient to establish a substantial limitation in a major life activity. So even if we were to look at the contradictory declaration, it wouldn't be it wouldn't be enough. It requires more. And again, in this third attempt for Mr. Blank to bear his burden again, it's not pointing to any medical records. It's not in the record. In my remaining time, I did want to touch on the FMLA interference argument. The law in the Sixth Circuit has developed such that it is clear that minimal contact during FMLA is not enough to establish an FMLA interference claim. Again, this is plaintiff's, excuse me, appellant's burden to show that there was interference. What the record shows is the conversation that was had hours after he submitted for FMLA leave. The discussions that Ms. Probst pointed to this morning, to the extent they occurred, were initiated by Mr. Blank. And the law takes that into account. The body of case law that has developed takes that into account. Who initiated the contact is important. And it's undisputed that following that conversation when he was informed of his demotion that he was the one, not Nationwide. He reached out to Nationwide's Office of Ethics. And there is testimony in the record that Nationwide was respectful of his leave. In fact, he went on to take the entire 12 weeks of leave allotted under the statute. So under the under the law that exists today. He falls short of establishing interference. Seeing that my time is running short, I'll just conclude by saying that the record, it's very clear on the record here that there's simply no evidence upon which a reasonable jury can find in favor of Mr. Blank. Affirming dismissal can be done on many grounds, all of which are addressed in our briefing. We therefore ask this court to affirm. Thank you. Thank you. Any rebuttal? I didn't reserve time for rebuttal. Thank you. Thank you very much. Thank you. I think we have the position in hand and the case is submitted and the clerk may proceed with the next case and call the next case.